United States District Court
Southern District of Texas
**ENTERED**
August 20, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PRINCE GREEN, TDCJ #1194396, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-20-1731 |
| JEFFERY RICHARDSON, | § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

State inmate Prince Green has filed a Prisoner's Civil Rights Complaint ("Complaint") (Docket Entry No. 1) alleging that the defendant, Warden Jeffery Richardson, failed to adequately protect him from contracting COVID-19 at the Estelle Unit in Huntsville. At the court's request, Green has also filed "[Plaintiff's] More Definite Statement" of his claims (Docket Entry No. 14). Now pending before the court is Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1) and Rule 12(b)(6) ("Motion to Dismiss") (Docket Entry No. 38). Green has not filed a response and his time to do so has expired. Instead, Green has filed several motions asking the court to order Warden Richardson to transfer him to a different prison facility, release him from custody, or grant relief on other issues that are unrelated to the claims asserted in the Complaint, such as the lack of air-conditioning, the presence of systemic racism, and the denial of telephone privileges (Docket Entry

Nos. 42, 43, 44, 45, 46, 47, 48). None of these motions contain a certificate of service showing that Green has complied with the court's previous instructions or the Federal Rules of Civil Procedure by serving a copy on the defendant's counsel of record (Order and Request for Answer, Docket Entry No. 30, pp. 3-4). After considering all of the pleadings and the applicable law, the Motion to Dismiss will be granted and all of Green's motions will be denied for the reasons explained below.

## I. Background

Green filed this lawsuit in May of 2020 expressing concern about his health and the spread of COVID-19 within the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), particularly at the Estelle Unit where Green resides.[1] Green discloses that he has been incarcerated in TDCJ since 2003, and that he has been confined at the Estelle Unit since 2017.[2] He is presently assigned to the general population, where he is lodged in a cell with one other cell mate in the "Faith-Base[d] wing" of the prison.[3]

---

[1] Complaint, Docket Entry No. 1, p. 4. For purposes of identification all page numbers refer to the pagination imprinted on each docket entry by the court's electronic case filing system, ECF.

[2] Plaintiff's More Definite Statement, Docket Entry No. 14, p. 1.

[3] Id. at 1-2.

Green, who was 63 years of age when his Complaint was filed, notes that he suffers from several chronic medical conditions, including: diabetes, high blood pressure, unspecified "heart problems," a "breathing problem," neuropathy, major depression, and a "bladder problem."[4] Green acknowledges that he has not been diagnosed with COVID-19 and that he has tested negative multiple times.[5] Nevertheless, Green contends that Warden Richardson failed to keep the prison population safe at the outset of the pandemic because inmates with COVID-19 were being transferred from other facilities to the Estelle Unit, which was not "practicing social distancing" or taking adequate precautions to stop the spread of the virus.[6] Noting that he is in poor health and that he has already served at least 18 years in prison, Green asks that he be allowed to "go home and die in peace."[7]

Warden Richardson moves to dismiss the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds that he lacks authority to grant the relief sought and, therefore, Green lacks standing to sue.[8] Warden Richardson also

---

[4] Complaint, Docket Entry No. 1, p. 4.

[5] Plaintiff's More Definite Statement, Docket Entry No. 14, pp. 4-5.

[6] Complaint, Docket Entry No. 1, p. 4.

[7] Id.

[8] Motion to Dismiss, Docket Entry No. 38, pp. 2-3.

moves to dismiss all of Green's claims under Rule 12(b)(6), noting that Green admits in his pleadings that he did not exhaust administrative remedies before filing suit.[9] Alternatively, Warden Richardson argues that Green fails to state a claim for which relief may be granted because his allegations are insufficient to establish liability for a constitutional violation under 42 U.S.C. § 1983.[10] These arguments are examined below under the applicable standard of review.

## II. Standard of Review

### A. Motions to Dismiss Under Rule 12(b)(1)

The defendant has moved to dismiss the Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. Federal courts are "courts of limited jurisdiction, having 'only the authority endowed by the Constitution and that conferred by Congress.'" Halmekangas v. State Farm Fire and Casualty Co., 603 F.3d 290, 292 (5th Cir. 2010). "'A case is properly dismissed for lack of subject matter

---

[9] Id. at 4-6.

[10] at 6-8. Warden Richardson also raises the defense of qualified immunity. id. at 10 12. The court does not address this defense because Green does not seek monetary damages. See Complaint, Docket Entry No. 1, p. 4. "Neither absolute nor qualified immunity extends to suits for injunctive or declaratory relief under § 1983." Orellana v. Kyle, 65 F.3d 29, 33 (5th Cir. 1995) (internal quotation marks and citation omitted); Williams v. Ballard, 466 F.3d 330, 334 & n.7 (5th Cir. 2006) (observing that qualified immunity does not apply to claims for prospective injunctive relief).

jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'" Krim v. pcOrder.com, Inc., 402 F.3d 489, 494 (5th Cir. 2005).

Dismissal under Rule 12(b)(1) is appropriate if the plaintiff lacks the requisite standing to sue. See, e.g., Little v. KPMG LLP, 575 F.3d 533, 541 (5th Cir. 2009) (affirming dismissal for lack of standing under Rule 12(b)(1)). When a Rule 12(b)(1) challenge is raised with other Rule 12 challenges, the court should consider the Rule 12(b)(1) arguments before addressing any attack on the merits. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (citing Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam)).

**B.  Motions to Dismiss Under Rule 12(b)(6)**

The defendant has moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted. To withstand a motion to dismiss under Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007) (citation omitted). If the complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Id. at 1974.

In reviewing a motion under Rule 12(b)(6), a court must "'accept[] all well-pleaded facts as true and view[] those facts in

the light most favorable to the plaintiff.'" Bustos v. Martini Club, Inc., 599 F.3d 458, 461 (5th Cir. 2010) (citation omitted). However, a reviewing court need not accept as true any "conclusory allegations, unwarranted factual inferences, or legal conclusions." Ferrer v. Chevron Corp., 484 F.3d 776, 780 (5th Cir. 2007) (citation and internal quotation marks omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1966).

Green represents himself in this action. A pro se litigant's pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)). Nevertheless, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level[.]" Twombly, 127 S. Ct. at 1965. If the plaintiff's complaint has not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Id. at 1974.

### III. Discussion

#### A. Lack of Subject Matter Jurisdiction

Noting that the only relief sought by Green is release from prison, Warden Richardson moves to dismiss the Complaint under

Rule 12(b)(1) for lack of subject matter jurisdiction.[11] Warden Richardson explains that only the Texas Board of Pardons and Paroles has authority to grant early release from imprisonment on an otherwise valid sentence.[12] See Tex. Gov't Code § 508.141 (establishing authority by a "parole panel" to consider and order release on parole); see also Tex. Gov't Code § 508.146(a) (describing eligibility for release on Medically Recommended Intensive Supervision as determined by a "parole panel").[13] Because the Texas Board of Pardons and Paroles is an agency that is separate from TDCJ, Warden Richardson explains further that he does not have authority to order Green's release on any form of parole.[14] Therefore, Warden Richardson argues that the Complaint must be dismissed because Green cannot establish the requisite standing to sue for this type of injunctive relief.[15]

---

[11]Motion to Dismiss, Docket Entry No. 38, pp. 2-3.

[12]Id. at 3.

[13]Green has filed a motion seeking compassionate release from prison, citing fear of COVID-19, racism, and the refusal of TDCJ to transfer him to an air-conditioned unit. See Motion to Implement or Apply Compassionate Release Motion by Prisoners, Docket Entry No. 47, p. 1. Apart from the form of parole known as Medically Recommended Intensive Supervision, it appears that Texas affords no avenue for compassionate release that is comparable to 18 U.S.C. § 3582(c)(1)(A)(i), which authorizes the modification of a term of imprisonment for federal prisoners where "extraordinary and compelling reasons" are shown. Green provides no authority in support of his request for release. Accordingly, Green's request for compassionate release will be denied.

[14]Motion to Dismiss, Docket Entry No. 38, p. 3.

[15]Id.

Lack of standing implicates federal court jurisdiction, which is limited by Article III of the United States Constitution to "cases" and "controversies." U.S. Const. art. III, § 2. See California v. Texas, 141 S. Ct. 2104, 2113 (2021) (noting that a federal court's power to adjudicate a case "includes the requirement that litigants have standing"). It is well established that "the irreducible constitutional minimum of standing contains three elements." Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992). To satisfy these elements a plaintiff seeking injunctive or declaratory relief must have (1) suffered an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) that is fairly traceable to the defendant's actions; and (3) that is likely to be redressed by a favorable decision. See id. At the motion-to-dismiss stage "the plaintiff must clearly . . . allege facts demonstrating each element." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted).

Green has not demonstrated that Warden Richardson is authorized to release him from prison, which is the only relief requested in the Complaint. Absent a showing that Warden Richardson has such authority, Green has not established that his Complaint is capable of redress or that he has the requisite standing to sue Richardson for injunctive or declaratory relief. See Okpalobi v. Foster, 244 F.3d 405, 426-27, 431 (5th Cir. 2001) (en banc) (concluding that the plaintiffs failed to demonstrate standing to maintain an action for injunctive relief in federal

court because the defendants lacked authority and had "no power to redress the asserted injuries"); see also Hale v. Collier, Case No. 1:20-CV-841-RP-SH, 2020 WL 5249532, at *3 (W.D. Tex. Sept. 3, 2020) (concluding that the plaintiff lacked standing to sue TDCJ officials for release that could only be granted by the Texas Board of Pardons and Paroles), report and recommendation adopted as modified, Hale v. Collier, 1:20-cv-841-RP, 2020 WL 6441099, at *2 (W.D. Tex. Nov. 3, 2020). If a court determines at any time that it lacks subject matter jurisdiction, "the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Accordingly, the Motion to Dismiss for lack of subject matter jurisdiction will be granted.

## B. Lack of Exhaustion

To the extent that Green challenges conditions of his confinement, Warden Richardson argues that the Complaint must be dismissed because it is evident from the pleadings that Green did not exhaust available administrative remedies before filing suit.[16] Because this case is governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), Green was required to exhaust administrative remedies before filing a suit challenging prison conditions.[17] See Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006)

---

[16] Motion to Dismiss, Docket Entry No. 38, pp. 4-6.

[17] Section 1997e(a) provides that

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison,
(continued...)

(citing Porter v. Nussle, 122 S. Ct. 983, 988 (2002); Booth v. Churner, 121 S. Ct. 1819, 1825 (2001)); see also Jones v. Bock, 127 S. Ct. 910, 918 19 (2007) (confirming that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

TDCJ has a formal two-step administrative grievance process. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004); see also Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (outlining the two-step procedure, which at Step 1 entails submitting an administrative grievance at the institutional level followed by a Step 2 appeal if the result is unfavorable). A Step 1 grievance, which is reviewed by officials at the inmate's assigned facility, must be filed within fifteen days of the alleged incident or challenged event. See Johnson, 385 F.3d at 515. Once an inmate receives a response to his Step 1 grievance, he then has ten days to file a Step 2 grievance to appeal an unfavorable result at the state level. See id. Substantial compliance with this process is not enough to exhaust remedies under the PLRA. See Dillon v. Rogers, 596 F.3d 260, 268 (5th Cir. 2010) ("Under our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion

---

[17](...continued)
or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

. . ."). A Texas prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. See Johnson, 385 F.3d at 515 (citation omitted).

Green admits in his Complaint, which is dated May 14, 2020, that he did not exhaust administrative remedies by completing both steps of the TDCJ grievance process before filing suit.[18] Pointing to this admission, Warden Richardson raises lack of exhaustion as an affirmative defense.[19] See Hershberger v. Lumpkin, 843 F. App'x 587, 590 (5t Cir. 2021) (emphasizing that "the failure to exhaust administrative remedies is an affirmative defense and must generally be pled by defendants in order to serve as the basis for dismissal") (citations omitted). Green has not filed a reply to the Motion to Dismiss and none of his other submissions demonstrate that he complied with the exhaustion requirement before filing this lawsuit.[20]

---

[18] Complaint, Docket Entry No. 1, pp. 3, 5.

[19] Motion to Dismiss, Docket Entry No. 38, p. 5.

[20] It appears from the pleadings that Green filed one or more Step 1 grievances before filing suit, but he does not allege facts showing that he completed Step 2 before executing his Complaint. See Plaintiff's More Definite Statement, Docket Entry No. 14, pp. 8, 9 (referencing two Step 1 grievances submitted by Green). Although a supplemental pleading contains both Step 1 and Step 2 grievances that Green submitted regarding claims of racism at the Estelle Unit, the Step 1 grievance (#20201492030) was returned by the grievance investigator and the Step 2 grievances were not accepted. See Exhibits attached to Letter, Docket Entry No. 16, pp. 2-7. Although it appears that Green has not exhausted administrative remedies, the court, in Part III.C infra, will consider the merits of Green's claims and the defendant's additional arguments in an abundance of caution.

The Fifth Circuit has emphasized that "pre-filing exhaustion of prison grievance processes is mandatory" and that district courts lack discretion to excuse a prisoner's failure to exhaust his administrative remedies. See Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012) (noting further that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint"). Therefore, a case must be dismissed if available administrative remedies were not exhausted. Id.; see also Valentine v. Collier, 978 F.3d 154, 162 (5th Cir. 2020) (holding that Texas prisoners were required to exhaust administrative remedies available in TDCJ before filing suit about COVID-19 and that their failure to do so was "fatal" to their claims). Because Green has not demonstrated that he exhausted administrative remedies as required before filing suit, this action is subject to dismissal for failure to comply with 42 U.S.C. § 1997e(a).

C.  **Failure to State a Claim**

Assuming that Green properly exhausted administrative remedies before filing his Complaint, Warden Richardson argues in the alternative that the Complaint must be dismissed for failure to state a claim because the allegations are insufficient to establish his liability as a supervisory official.[21] Warden Richardson contends further that Green's general allegations are insufficient

---

[21]Motion to Dismiss, Docket Entry No. 38, pp. 8-10.

to demonstrate a constitutional violation of the Eighth Amendment.[22] The arguments are addressed in turn.

1. <u>Supervisory Liability</u>

It is well established that a supervisory official may not be held liable for a civil rights violation under a theory of <u>respondeat superior</u> or vicarious liability. <u>Monell v. Dep't of Social Services of City of New York,</u> 98 S. Ct. 2018, 2036 (1978). Because vicarious liability is inapplicable in an action under 42 U.S.C. § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." <u>Iqbal,</u> 129 S. Ct. at 1948. "Supervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." <u>Alderson v. Concordia Parish Correctional Facility,</u> 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted).

Green asserts that Warden Richardson is liable because prisoners with COVID-19 were transferred from other TDCJ facilities to the Estelle Unit, increasing the possibility that he could become infected.[23] However, Green does not allege facts showing that Warden Richardson was personally involved in authorizing the

---

[22]<u>Id.</u> at 6-8.

[23]Plaintiff's More Definite Statement, Docket Entry No. 14, p. 11.

transfer of prisoners from other TDCJ facilities or that he had any authority to prevent those transfers. Because Green does not allege specific facts showing that Warden Richardson personally authorized the transfers or that he implemented a constitutionally deficient policy allowing those transfers to occur, Green fails to state a claim against Warden Richardson in connection with this issue.

2. Eighth Amendment - Deliberate Indifference

Warden Richardson argues that Green's general concerns about exposure to COVID-19 are insufficient to establish a violation of the Eighth Amendment, which prohibits conditions that pose an unreasonable risk to a prisoner's health and safety. See, e.g., Helling v. McKinney, 113 S. Ct. 2475, 2481 (1993). "To show a violation of the Eighth Amendment, the plaintiff must prove: (1) objective exposure to a substantial risk of serious harm; and (2) that prison officials acted or failed to act with deliberate indifference to that risk." Carlucci v. Chapa, 884 F.3d 534, 538 (5th Cir. 2018) (citation and internal quotation marks omitted).

"Deliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both

be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 1984.

The pleadings reflect that Green had only one encounter with Warden Richardson, which occurred in January of 2020.[24] On this occasion Green approached Warden Richardson at the "Central desk" and asked "what he was going to do about the COVID virus," but Richardson "didn't say anything" so Green continued walking.[25] This allegation does not demonstrate that Warden Richardson was aware of Green's pre-existing medical conditions or concerns and ignored a risk to Green's health with deliberate indifference.[26]

---

[24] See id. at 12.

[25] Id.

[26] Green alleges that he later complained about the loss of taste and smell, night sweats, headache, as well as mental stress, but that he was denied medical care for symptoms of COVID-19 by unidentified nurses and "Dr. Williams," who serves as the "Medical Administrator." See Plaintiff's More Definite Statement, Docket Entry No. 14, pp. 7, 8. Assuming that these allegations are true, Green does not articulate facts showing that Warden Richardson was aware of his symptoms or that he was involved in the denial of medical care. For purposes of 42 U.S.C. § 1983, Warden Richardson is not vicariously liable for the actions of subordinate employees. See Pierce v. Texas Dep't of Criminal Justice, Institutional Div., 37 F.3d 1146, 1150 (5th Cir. 1994) ("Vicarious liability does not apply to § 1983 claims") (citing Monell, 98 S. Ct. at 2037).

Green acknowledges that measures were taken to prevent the spread of COVID-19 at the Estelle Unit. The unit was placed in lockdown and privileges were suspended at the start of the pandemic.[27] Cells were "spray[ed]" and inmates were given soap and masks.[28] The pleadings further confirm that Green has been tested for COVID-19 on multiple occasions with negative results each time.[29] He has also received at least one dose of the vaccine.[30] Although Green contends that Warden Richardson should have asked for "help" from the "CDC," he does not allege what else Warden Richardson could have or should have done.[31]

Available public records reflect that TDCJ acted promptly in response to the threat posed by the COVID-19 global pandemic, which caused the President of the United States to declare a national state of emergency on March 13, 2020. See Proc. No. 9994, 85 Fed. Reg. 15,337, 2020 WL 1272563 (Mar. 13, 2020). The Governor of the State of Texas issued a disaster declaration that same day. See Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2094-95 (Mar. 13, 2020). The Fifth Circuit has

---

[27]See Plaintiff's More Definite Statement, Docket Entry No. 14, pp. 10-11.

[28]See id. at 9.

[29]See id. at 4-5.

[30]See Motion [to] Stop Inmate From Taking Shot, Docket Entry No. 43, p. 1.

[31]See Plaintiff's More Definite Statement, Docket Entry No. 14, p. 11.

addressed TDCJ's response to COVID-19 in the form of a policy that was implemented by the TDCJ Correctional Managed Health Care Committee on March 20, 2020, which was subsequently revised several times to incorporate guidance from the Centers for Disease Control. See Valentine, 978 F.3d at 163 (discussing Correctional Managed Health Care Policy B-14.52). After briefly describing the policy the Fifth Circuit found that "TDCJ met its constitutional obligations" under Eighth Amendment precedent, which precludes liability where prison officials have responded reasonably to a known risk to inmate health or safety "'even if the harm ultimately was not averted.'" Id. (quoting Farmer, 114 S. Ct. at 1974) (emphasis omitted).

Absent facts showing that Warden Richardson acted with deliberate indifference, Green's conclusory allegations and generalized fears about COVID-19 are insufficient to state a claim under § 1983. See Iqbal, 129 S. Ct. at 1949 (observing that "'naked assertion[s]' devoid of 'further factual enhancement'" do not suffice) (quoting Twombly, 127 S. Ct. at 1966) (alteration in original); Young v. McCain, 760 F. App'x 251, 257 (5th Cir. Jan. 14, 2019) (per curiam) (concluding that a pro se prisoner's conclusory allegations of "ill will" and "injurious intent" were insufficient to state a claim) (citing Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990)). Other courts have concluded that where an inmate alleges that prison personnel "were constitutionally deficient in mitigating inmates' COVID-19 risks . . . as a whole

-17-

. . . . [t]his does not demonstrate their subjective knowledge of a risk in [the inmate's] particular case that they specifically disregarded." Thompson v. Bonner, No. 2:20-cv-2658-JTF, 2021 WL 1865265, at *6 (W.D. Tenn. May 10, 2021); see also Moore v. Washington, Case No. 1:20-cv-1184, 2021 WL 508304 at *6 (W.D. Mich. Feb. 11, 2021) (dismissing claim under § 1915A brought by inmate based on prison's handling of COVID-19 and finding plaintiff "fails to allege any specific facts showing that the named Defendants in this case acted with the requisite deliberate indifference to a substantial risk of serious harm to Plaintiff"); McCrary v. DeWine, Case No. 1:20-cv-388, 2021 WL 320737 at *4 (S.D. Ohio Feb. 1, 2021) (recommending dismissal under § 1915A and finding that "Plaintiffs' general conclusory allegation that the prison system is ill-equipped for social distancing or protecting inmates is insufficient to state a claim."), report and recommendation adopted, McCrary v. DeWine, Case Number 1:20cv388, 2021 WL 1087465 (S.D. Ohio March 22, 2021). Because Green has failed to allege facts establishing a constitutional violation after having an opportunity to supplement his pleadings, Warden Richardson's Motion to Dismiss will be granted and this action will be dismissed with prejudice.

### IV. Conclusion and Order

Based on the foregoing, the court **ORDERS** as follows:

1. Defendant's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6) (Docket Entry No. 38) is **GRANTED**.

2. The civil action filed by Prince Green is **DISMISSED WITH PREJUDICE**.

3. All of Green's pending motions (Docket Entry Nos. 42, 43, 44, 45, 46, 47, 48) are **DENIED**.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 20th day of August, 2021.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE